KINGSBURY'S EXECUTORS, Defendants in Error, *vs.* LANE'S
EXECUTOR, Plaintiff in Error.

1. The action of replevin did not abate by the death of the plaintiff and defendant, but might be revived in the name of their personal representatives.

### Error to St. Louis Circuit Court.

This was an action of replevin brought by James W. Kingsbury against Hardage Lane, in 1843, for two negro women. Lane pleaded property in himself to the slaves. In November, 1849, the death of the defendant, Lane, was suggested, and the appearance of his executors entered. In December, 1849, there was a trial and verdict for plaintiff. The case was brought to this court and reversed. On the 3d of January, 1854, the executors of Kingsbury suggested his death, and entered their appearance. On the 3d of May, 1854, the court, upon inspection of the record, ordered that the suit be abated, to which the defendants excepted. The defendants thereupon moved the court to assess the value of the property replevied and damages for the use of the same, but the court refused to grant such motion, to which refusal defendants also excepted, and brought the case to this court by writ of error.

Mr. *Field* and Mr. *Darby*, for plaintiff in error, in a printed brief, argued the following points : I. There was error in giving judgment of abatement ; for the cause of action survived, and the representatives were regularly before the court. (Statute of 4th Edw. III, c. 7, *de bonis asportatis in vita testatoris.* 1 Williams on Executors, 512. R. C. 1835, tit. Practice at Law, art. 5, secs. 2 and 3. Tit. Administration, art. 2, secs. 24 and 25. 1 Chitt. Pl. 188. 2 Esp. N. P. 375. Com. Dig. Administrator B. 13. 11 S. & R. 131. 4 Mass. Rep. 480. 14 Mass. Rep. 231. 2 McCord, 194. *Higgins* v. *Breen,* 9 Mo. Rep. 497. Fitz. Nat. Brev. 59. *Petrie* v. *Duke,* 2 Lutw. fo. 1120 — Coke's Entries. 2 Sellon's Practice, 124. 2 Troub. & Hal. Prac. 150. Graham's Prac.

888. 22 Wend. 602.) The cases of *Jones* v. *Littlefield*, 3 Yerger, 133 and *Rector* v. *Chevalier*, 1 Mo. Rep, 345, were decided upon a different state of law from that now existing here. (Car. & Nich. Tenn. Laws, 65, 68. *Lewis* v. *Outlaw*, 1 Tenn. Rep. 140. 1 Terr. Laws, Mo. 849, § 35. Id. 924, § 20.) II. There was error in overruling the motion for an assessment of the value of the property replevied, and the defendant's damages. (2 Sellon's Practice, 164-5. 2 Tidd's Practice, 703. *Butcher* v. *Porter*, Salk. 96. 2 Wilson, 83. 14 Mass. Rep. 231.)

Mr. *Polk*, for defendant in error. 1. The death of the defendant abates the action of replevin. (4 Mass. 480. 8 Greenl. 128. 19 Wend. 447. 17 Mo. Rep. 362.) 2. The action of replevin is abated by the death of the plaintiff. (1 Comstock, 163. 6 Hill, 558.) 3. The fact that steps were taken in the case after the death of the defendant cannot alter the case. (8 Watts (Pa.) Rep. 460.) 4. The court did right in refusing the defendant's motion to assess the value of the property replevied and damages for the detention ; because, the suit having abated, no further proceedings could be had in it. (8 Greenl. Rep. 128.)

LEONARD, Judge, delivered the opinion of the court.

This judgment must be reversed, and the cause remanded. The question is not without difficulty, and the result to which we have come has only been arrived at after a good deal of consideration. The propriety, however, of allowing a suit in replevin to be continued in the name of the administrator of a deceased defendant, considered in reference to the rights of either party, is so manifestly proper, in every point of view, and so free from every practical objection, that we felt it to be our duty to allow it, if it could be brought within the legislative provisions, in relation to the continuing of suits abated by the death of parties.

The action of replevin, confined, originally, to a tortious taking, has been greatly extended by our own legislation, until

it has become a useful and common, and, indeed, the only effectual legal remedy for the recovery of personal chattels, where the party prefers a recovery in specie to a compensation in damages. A pretty large privilege is extended to the plaintiff in allowing him, upon his own affidavit of ownership, to deprive the defendant of his possession; but, to guard against abuse, a provision is made that, if he fail to establish his title, he shall pay double damages for the use of the property during the time the defendant is kept out of it, and judgment shall be in the same suit rendered against him and his securities, for the damages and a return of the property.

At the common law, the death of either party abated the suit, and all causes of action founded upon wrongs to person or property were extinguished. The administrator representing the assets, rather than the person of his intestate, gave rise to the maxim that personal actions die with the person, which included within it all actions founded on wrongs, and in that form, but not actions *ex contractu.* This, however, even in early days, was considered quite too narrow an exception to the maxim, and, therefore, by the statute of 4 Edward III, it was enacted that, "in times past, executors had not had actions for a trespass done to their testators, as of the goods and chattels of said testators, carried away in their lifetime, it was provided that executors, in such cases, should have an action against the trespassers in like manner as their testators should have had if they were living." And this act was extended by the courts far beyond its words, and, by construction, made to embrace all injuries done to the personal estate of the intestate, lessening it in value, (1 William's Ex'rs, 670,) and, accordingly, executors and administrators afterwards maintained trover and replevin for a conversion or taking, done in the lifetime of their testators or intestates. (1 Broom's Maxims, 404.) It, however, only gave the remedy to the administrator of the injured party against the wrong doer himself, and gave no remedy after the wrongdoer's death against his administrator, and fell, in other particulars, far short of an enlightened system of law.

To remedy these defects, our legislature, at the revision of 1835, in the revised statute concerning Administrators, art. 2, secs. 24 and 25,) provided, in substance, that all civil remedies for wrongs done to the rights of others, except for injuries to the reputation and person, should survive to the representatives of the injured party, and against the representatives of the wrongdoer. Broader language cannot be imagined. It embraces all civil actions, and may be justly said to be an entire repeal of the old maxim, substituting in its place, in the next section, a provision in the shape of an exception, which subjects to the operation of the old rule mere personal injuries. Of course, under this law, the unjust caption, which was the cause of the present action, survived to the administrator of the plaintiff, and also against the administrator of the deceased defendant. But it is insisted that this form of action cannot be revived; that an original action of replevin or detinue cannot be maintained against the administrator of the wrongdoer for a taking or detention committed by the intestate in his lifetime, and, therefore, by the words of our statute concerning the revival of suits, it cannot be continued against him. The only reason, however, why the action of replevin cannot be instituted against the wrongdoer's administrator is, because, as an original suit, it is inappropriate to the altered condition of things. If the specific property taken by the intestate in his lifetime has passed into the hands of his administrator, who detains it, this is a mere individual wrong on the part of the administrator, for which he is personally liable, and if it is sought to be recovered in replevin, the action can only be brought against him in his own right, in respect to his own wrong, in taking or detaining property that did not belong to his intestate, and cannot be maintained against him in his representative capacity. This objection, however, does not exist to the continuance of an action of replevin, after the death of the wrongdoer. The possession of the property having been delivered to the plaintiff at the commencement of the suit, the proceeding is merely to determine the right and recover dama-

ges for the unjust taking or detention; and if it is revived and continued against his administrator, nothing can be recovered except the damages for which the intestate was liable. The provision of the statute in relation to suits abated by the death of a single defendant is, that " the action shall not be thereby abated, if it might have been originally prosecuted against the executors, administrators, &c., of the defendant; but such of them as might have been originally prosecuted for the same cause of action, shall be substituted as defendants on the application of the plaintiff." It is to be observed that the legislature have made no distinction between the different forms of actions; but the courts, finding a class of cases that cannot be instituted against administrators without subjecting the assets to liability for their own personal wrongs, such as replevin and detinue, except them from the operation of those statutes providing for the continuing of actions upon the death of the original parties to the wrong or contract.

The legislature provide, generally, that all causes of actions, except for wrongs to the person or his reputation, shall survive against the administrator of the wrongdoer, and then, in relation to the continuance of suits abated by death, provide, in the same general manner, that a suit commenced against the intestate may be continued against his administrator, if it might have been originally instituted against him, and the argument is, that this particular form of action could not have been originally brought, and so cannot be continued against an administrator. The answer to this is, the reason why the courts will not allow it to be brought fails, where the question is as to its continuance, after having been lawfully commenced in the lifetime of the intestate. The legislature have not said that an action of replevin shall not be brought against an administrator, as such; but the courts, by an equitable construction of the statute, from the necessity of the case, in order to avoid subjecting the assets to liability for the wrong of the administrator, have, it is said, and must of necessity hold, that neither detinue nor replevin can be allowed as original suits against administrators in respect to their own wrongful deten-

tion of property that had been previously wrongfully taken or detained by their intestates. This may be so, but there is no such necessity when the question is as to the continuance of an action of replevin, where the recovery is necessarily confined to the damages occasioned by the intestate's own act, and for which his assets are admitted to be liable under our law.

Whether replevin can be brought against an administrator, upon an unlawful taking or detention by his intestate, for property still continuing unlawfully in the administrator's possession, is not the question here, and we express no opinion about it ; but admitting, for the present purpose, that it cannot, we yet think the action does not abate after it has been commenced, by the death of the defendant, but may be continued to a final judgment, in the name of his administrators. The ground taken in the Tennessee case, (*Jones* v. *Littlefield*, 3 Yerger, 133,) is not inconsistent with this view of the subject. It is there laid down that " a suit in detinue cannot be supported against administrators, as such, upon the detainer of their intestate or upon their own detainer—not in the former case, for it is a wrong or tort of their intestate, for which the assets are not liable, nor they responsible, as administrators holding them, and entrusted with their appropriation and distribution ; nor, in the latter case, for the detainer is their own act, for which they are answerable in their own private capacity." But here, by our statute, the original cause of action does survive. The original taking or detention is a wrong for which the assets are made expressly liable, and, in this proceeding, the damages to be recovered are confined to those occasioned by the original wrong.

Neither does this decision conflict with the case of *McDermott* v. *Doyle*, (17 Mo. Rep. 366,) where the question was as to the continuance of an action of detinue against the administrator of a deceased defendant, when the damages to be recovered for the detention may come down to the time of the verdict, and so embrace damages for which the administrator alone was personally liable; and the decision proceeds upon that ground. In *Mellen* v. *Baldwin*, (4 Mass. 480,) the ap-

plication was by the administrator of a deceased defendant in replevin, to allow the suit to be continued against him as defendant, and the refusal was put upon the ground that the cause of action, being a mere personal tort on the part of the original defendant, was extinguished by his death, and not preserved by the statute of Edward, which gave the right of action to the administrator of the injured party against the wrongdoer only, and not against his administrator, after his death, and the court remarks : " If the administrator could not be compelled to take on him the defence, neither can he be admitted on his own motion, for his right must depend on the nature of the action, and not on his own consent." But, in Pennsylvania, (*Keite, Adm'r,* v. *Boyd,* 16 Serg. & Rawl. 300,) the action is allowed to be continued against an administrator of a deceased defendant, without the aid of any statute, upon the manifest propriety of the thing, the court declaring that, in their system of law, replevin was a property suit much used and very beneficial ; but, if the party who brought it were liable to be defeated by the death of the defendant, its usefulness would be much diminished, and the same view seems to be taken of the matter in South Carolina. (*Salvande* v. *Cripps,* 2 McCord's Rep. 164.)

. We remark, in conclusion, that in replevin, the parties are, reciprocally, plaintiff and defendant ; that the suit must result, if the parties live, in a judgment of recovery for one or the other, and when it results in favor of the defendant, he recovers not only the compensation provided for him in the double damages given by the statute, but is secured in the payment of these damages and the return of the property, by a judgment against both plaintiff and his sureties ; but the effect of allowing the suit to abate by the defendant's death, is to deprive his estate of these benefits, and leave the property replevied in the hands of the plaintiff, without any security for its return, or compensation for the wrong done, other than single damages, if it turn out that the plaintiff had no title to the property.

' Let the judgment be reversed, and the cause remanded.